Good morning and may it please the court. Sam Koistra on behalf of appellant Fernando Richter. I do intend to reserve three minutes of my time for rebuttal. The circumstances giving rise to this appeal are simple but they are extraordinary. A longtime Arizona prison guard who worked in prisons directly with prisoners who was charged with keeping those prisoners safe from assault, who could be hauled into court if he was accused of falling short of that duty, was allowed to serve on the jury deciding the case of two other longtime Arizona prison guards who also worked in Arizona prisons, who also worked directly with prisoners, who also had a duty to protect those prisoners from assault, and who had in fact been hauled into court on the accusation that they had failed to protect Mr. Richter from the serious assault that nearly took his life. Under this court's established precedent, those are the kind of extraordinary circumstances that give rise to a presumption of bias on the part of that juror, juror number one, and the district court should have struck that juror for that reason. Which case are you referring to counsel? Pardon? Which case are you referring to? Because I was looking at, you know, Alsup I think was the best case for your side. Would you agree? I agree with that, yes. But the cases that have been decided after that have sort of cabined Alsup to a situation where there's some emotional connection, some really fear of violence, fear or danger to that individual. So how do you, how do you, what's your position with regards to the cases that have followed Alsup? So our view is that Alsup stands for, yes, there's a fear of vulnerability to the conduct that's on the file, but also the employment relationship aspect of it. I mean, the Fields case describes it that way. Or I believe Rodriguez says it's an employment relationship plus some additional factor. Right. In this case, we feel that there are, there is clearly an employment relationship and there are also additional factors that are present. What are those? So I'll go through them beginning. So first, just to be thorough, the employment relationship. This is a case involving a juror who was himself a 10-year veteran employee of ADCRR. No longer there, though. No longer there. It's the timeline for when he left ADCRR. I will admit it's unclear from the record. The testimony, I believe, is that ER 135 is that he had, however, had been at his new position as an immigration detention officer for a private ICE contractor for, he said, about a month. So it does seem like the interval between his time with the Arizona Department of Corrections and ICE was fairly short. But he was, if you were correct, he was no longer there. But this, of course, precedent when they talk about the employment relationship, there's never been held that the employment relationship has to be contemporaneous to create the kind of relationship that might give rise to an implication of bias. I would look in particular, just through the negative inference to the United States versus Kavaschuk, if I'm saying that correctly. It's in the briefs. That case involved a juror who was, it was a criminal trial. The defendant was an employee of Microsoft, and the juror himself had been a contractor for Microsoft at some time before the employee worked there. The juror, this court still considered the employment relationship, but they looked at, holistically, how long did he work there? What division did he work with? He was a contractor versus a direct employee. So the employment relationship is still considered, but it's considered holistically. So in this case, we have someone who worked for the Department of Corrections for 10 years, appears to have only somewhat recently left that position. The employment relationship is still a factor. It would be, I will concede, a greater factor if he was still an employee. It would be a lesser factor if he'd been an employee 25 years ago. It would be a lesser factor if he'd been an employee for two months instead of 10 years, which is the case here. So even though there's not a contemporaneous employment relationship, that consideration is still in play here. And obviously this case involves conduct by two ADCR employees in their capacity. Right, what are the plus factors? So the additional factors is the similarity of the employment relationship, the conduct, excuse me, the similarity of the employment relationship. That sounds like double counting the employment relationship. Employment plus employment. Well, again, I will turn back to the Kavaschuk case. That's, again, sort of a negative example. What this Court found in Kavaschuk is that the, well, I will step back a bit further. There is a number of cases that say, for example, if you work for the federal government, you can still serve on a trial in which the federal government is a party. There's a Supreme Court case, I'm forgetting the name, I apologize, it's in our briefing, that involves, there's a, the United States Treasury Department's Narcotics Bureau was involved in a narcotics prosecution. There were jurors that served on the case that also worked for the Treasury Department, but they did not work with the Narcotics Bureau, right? So there's an employment relationship. Everybody works for the Treasury Department, but their work... Isn't your simple point just, I mean, you could, some massive company, you could have two kinds of employees, but they're very different jobs, and here you're saying it's a similar job, so I could see where that would... Thank you, Judge, thank you, Judge. Okay, so maybe it's double-counting a little bit, but, you know, I could see where you say, not only did they work for the same company, but they had, he did exactly this job, pretty much. Exactly, thank you. So, but I'm still not sure that's enough, so what else do you have other than... Well, I think I would just like to emphasize, though, when we were talking about doing the same job, it's not that they just were doing similar jobs. They were doing very much the same job, right? Both the defendants, in this case, and the surer are line corrections officers working in the prison directly with prisoners, right, with a responsibility to protect those prisoners from assault. I don't want to jump you off of your factors, but it seems to me like a key issue is, you have, two people have the same job, and it's a fear that you could somehow kind of get punished or something like that. That seems to be like at least something behind, and when you no longer work there, and it seems like that's a little distance. That's what I'm struggling with. Right, well, that leads me, I guess, to the third factor. I should probably hurry up and get there. The third factor, which we derive from all stuff, again, is the fear of vulnerability to the same conduct that is on trial, right? AllSup involved jurors who were branch bank employees, inherent in being a branch bank employee, is your bank might get robbed, and so there's an inherent fear, inherent to that employment, that you're going to get robbed. There's no reason to limit AllSup to its facts, right? I think that principle should apply to any danger of any kind that's inherent to that job. Being a corrections officer, it is very, very common for corrections officers to be the subject of litigation, much like this case. We cited authority to that point. So, I see your point. That does start to feel kind of like double counting, because under your conception, I think you have a very different concept. As I understand, their conception is, you have to have something special about the job, like a physical injury of getting shot in your bank, getting robbed, or something like that. If it's just, you know, you could, in theory, be liable the same way this other person that works could be liable, then it does start to feel a little bit like that's double counting, because why would not always be true for almost any type of similar employee? Is that, at least from my perspective, that's what I'm struggling with. I think the idea is that this is a kind of risk, right? So, where you get sued a lot? So, where you get sued a lot, exactly. If we were talking about two people that worked, you know, at a store in the mall. If you're a teller, Macy's. Exactly, Macy's. But if you're, you know, obviously we see a fair number of these type of suits, and so, it's kind of built into your job description that you're going to get sued. So, what about, like, a nurse? You know, because we think of doctors and nurses getting malpractice or something like that. So, if you're, if a nurse, under your view, and you couldn't serve on a jury involving a nurse malpractice suit or a doctor malpractice suit? No, but I don't think that is the case, carte blanche, because we also have to have the factor of the employment connection. If you were a nurse that worked for the same hospital that's being sued under malpractice. Why would that matter? Because, you know, I think we kind of, we kind of think that it's just sort of a, kind of like we would with correction officers. They just get sued a fair amount, it seems like, and so do doctors and nurses. So, why would it matter if you necessarily, you could, in other words, you might work for a different hospital and be thinking, I could get sued. I could get sued just like this one's getting sued at the hospital across town. So, the gravamen of this entire analysis is the danger of untoward emotional involvement in the case, right? So, the easier it is for the juror to, perhaps unconsciously, place himself in the position of a victim or a party to the case, the greater this risk becomes. So, if it's, I'm a nurse, this person's a nurse, that's one thing. If it's, I'm a nurse at hospital X and this person is a nurse at hospital X, the connection becomes that much stronger. Okay, but in our instance, they're no longer a nurse at hospital, they used to be, and so what is your, you know, and you think that, maybe you're like, man, I'm glad I got out of there and I didn't get sued, you know, but is your... Well, but maybe they're a private nurse. Maybe they're a nurse that, not necessarily at the hospital, but they're providing care for personal services. I mean, I'm trying to have an example that's similar to what happened here. Would that be the same emotional connection that you see would happen? I think so. In your example, in this one, both the private nurse and the nurse at the hospital could get sued, just as this juror could have been sued at ADCURR. He could also be sued by an immigration detainee at his new position. But I think what this analysis is showing, I mean, we have a narrow category of implied bias that is just implied as a matter of law and we don't do an inquiry into actual bias. But in most cases, we do an inquiry into actual bias, where in the voir dire, you're going to sort out all these connections and the district judge is going to make a judgment as to whether, in light of what's been revealed, this relationship is one that has established bias on the part of this juror. This juror can't be fair. So why have you moved from the, let's assess the specific facts, into conclusively just on a handful of facts, no other facts relevant automatically as a matter of law? Why is that the case here? Well, again, I think it's because of the multiple factors that create a personal connection between this juror and the facts on trial. This is a case where, again, someone who worked for 10 years for the same employer is now doing essentially the same job. But couldn't you have asked if the fear is, you know, liability for similar conduct? Well, he'd completed the time there. You could ask to him, voir dire, how many complaints were made against you? Did you ever have some of them? This could all be explored as part of the voir dire. Why does it have to be conclusively presumed that just because he worked there, he has fear of future lawsuits? Well, in this case, I believe there were some limitations on the scope of voir dire that perhaps prevented that fuller explanation, exploration. I know, but that may be a different ground for objection, but it's not going to flip you all of a sudden into a bias as a matter of law just because the judge didn't do a good voir dire. Well, I think, again, the question is whether the average, it's a subject, it's an objective inquiry where the average person, so the average person has this employment relationship, has these other factors, that it's enough to establish bias. I think what you're hearing from us, and I'm going to... Your Honor, respectfully, I believe I'm out of my time. May I reserve? No, I'm going to give you more time. We've asked a lot of questions, so I'm going to give you your three minutes on rebuttal. I appreciate that. You're hearing a skepticism about the fact that if you're, that you would necessarily presume basically based on employment, plus these little things you're adding on top of it, that the person would be biased. And I think part of that is a lot of people that are, especially former employees, they don't even necessarily like their prior employer, and they may have had a bad experience. So why doesn't, I mean, so again, in an individual case you might find somebody, but just generally speaking, why would we assume that just because they used to work there, I'm kind of asking the same question, but these are all things that make it, are struggling with the skepticism for a general rule here. So I think the reason the employment relationship is a factor is, again, it's not necessarily only because of loyalty to the former employer. I think it is, again, this idea of, oh, that could be me. There by the grace of God, go I. I could have been in that position, which is also a reason that it persists. But I'd like to add to that, and I, it very well could be, yeah, that place stunk to work at, and there for the grace of God, I didn't get sued, but you know what, they need it. They need, you know what I'm saying, it could work both ways. I'm just not quite sure why it necessarily has to be that this person, if I was an employer, I'd be a little worried, some employees would be worried, I don't know if I want this person on the jury either. Maybe they, so again, that seems like an individualized analysis. I think, well, again, but the standard is, of course, is objective analysis. But I think you are correct, if this had come out the other way, the other side could have made a similar objection. I think the issue is that, I think the issue is the one that was made by trial counsel, is that this individual juror, because of his numerous experiences and connections to the facts of this specific case, which is too close to the issue at trial to reliably be able to be unbiased under these circumstances, and because of that close proximity to the specifics of the case, it is reasonable to presume that an average person in that position would have some kind of emotional connection to the case that could interfere with their ability to be biased. Can I ask you one more question, which is, did Hernandez Richter use all three of his peremptories at trial? He did use all of his peremptory strikes. And chose not to use one against this juror, just sort of letting him go on and building in the appellate error, rather than using the peremptory to cure the problem? Yes, Your Honor, if I may indulge me to address this particular issue for a minute. Appellees, I think, intimated this issue, I think at 14 of their brief, they didn't directly raise it, but were critical of Mr. Richter for not using a peremptory in that kind of curative manner. The notion that a party has to use a peremptory strike curatively to strike a juror that should have been struck for a cause has been considered and rejected by the U.S. Supreme Court in United States v. Martina Salazar. The court was approached with that exact same argument by the government in that case. Martina Salazar says that you could do it and then raise a Sixth Amendment issue. It doesn't necessarily say that. That'll win versus the waiver argument that Justice Scalia made in his separate opinion in that case. So, there are two separate holdings, right? One holding is that if you use the peremptory strike against this juror, then you simply mooted the issue on appeal because there's no biased juror that actually was serving. The government advanced an alternative theory, which the majority opinion rejected, saying that you should be required to use the strike Rule 24B required you to do it. Pardon me? That Rule 24B required you to do it. That was the government's alternative argument. Right, correct. And that's rejected. But what they don't respond to, and Justice Scalia said in his separate writing, is that just principles of waiver and not inflicting injury on yourself and then claiming it as a basis for a new trial should reach the same result. And they didn't directly respond to that issue. I think there are sound reasons. So, what you're describing would essentially be a new rule, because there is no rule in this court's implied bias jurors. Part of the reason why you're given peremptories is if somebody lands on the jury, you don't want to because they should have been stricken for cause. You can get them off. It's not just shaping the jury is why we give you peremptories. We give you peremptories so that you can fix this sort of problem rather than sort of, it has an element of sandbagging to it. There are reasons that you can get a for-cause challenge. There are also reasons that you might choose to exercise a peremptory challenge that would not necessarily rise to the level of a for-cause challenge. These two things are not necessarily co-extensive. And what the Supreme Court says in Martina Salazar is that federal law is not in the business of policing that strategic choice, apart from Batson and similar cases. It's not in the business of policing that strategic choice and how the parties choose to exercise their peremptory challenges. That's again, it's a strategic choice that trial counsel was asked to make on the fly. And the takeaway for me from Martina Salazar is the court says we allow the latitude for trial counsel to make that kind of difficult in the moment choice without penalizing them for not using their peremptory in a curative strike. I think it's also important to emphasize that the trial court has an independent constitutional duty to strike a biased juror from the panel. And I think it's sort of letting the trial court off that responsibility. It minimizes that duty if you've then placed the onus on the parties to correct an error that was caused by the trial court's abuse of discretion. Okay. All right. Thank you, counsel. As I said, we took you over, so I'll give you three minutes for rebuttal. But we'll hear now from Ms. Zollner. Did I pronounce that correctly? Very close. Okay. Yeah, please, the court. My name is Tara Zollner for appellees Christopher Romero and Julie Bowers. There is no question here that the juror in question, juror number one, was not actively biased. He gave textbook answers to all of the board of your questions about any potential bias that he might have as a result of being a correction, a tenure corrections officer. So the court will have to infer it. And the only basis for inferring it is the case law. And no other case, not even ALSEP, comes close to what plaintiff is suggesting here, a wild expansion of ALSEP. Plaintiff is equating past employment with what is, what's current employment in ALSEP and a manufactured fear of a civil lawsuit with ALSEP's reasonable apprehension of violence. So, you know, personal... Well, ALSEP is not limited to just personal apprehension of violence, is it? I mean, that's what I take that case to talk about, is sort of that personal or emotional sort of connection, right? That's what I see that that case and maybe the string of cases after sort of get to. But I guess my question to you is this. This was not just the past 10-year employment, but the current employment also as a quasi-correction officer at this facility, that there's that fear of potential liability because they are involved in similar conduct, similar employment responsibilities of caring for these individuals that are in their custody. That's what I take their argument to be. Why is that not sufficient? Well, I would first say that the mechanism for ensuring partiality or impartiality of the jury is first and foremost for ADARE. That's the bulwark of the system. This is leading me to your question. It allows the parties to probe the jurors for bias, and the jurors must answer truthfully. Here, the jurors were asked if, and I don't know that it is on the appellate record, but the jurors were asked if they'd ever been subject to civil liability or if any family members had, and no jurors raised their hands, including this one. Plaintiff's counsel could have followed up on that with juror number one. Have you ever been subject to civil liability? And I think it's a broad assumption to say that the fear of potential civil liability rises to the level of ALSEP, where arguably for these corrections officers, that's part of the job. Inmates are filing grievances against you all the time, but also you're going to be indemnified. They know that as well. I would also say, though, that this assumption, part of the problem with plaintiff's argument is that it assumes, based on very limited questioning, that the responsibilities of this corrections officer and the plaintiffs in this case were the same. When they were not, this corrections officer worked at two different facilities. This case arose out of the IMN facility, which is a male facility. This corrections officer worked for six years at Perryville, which is a female facility. This is not in the record because plaintiff never raised this implicit bias argument, so the parties were never able to kind of delve into this. It takes away from the court the opportunity to cure what plaintiff has now sandbagged the court and defendants with. And then he spent four years at the Phoenix facility, which is an intake facility, so it's not the same. And this all could have been hashed out on voir dire if plaintiff had raised this objection at that time. Did I answer your question? Sort of, but I guess your argument is that you're comparing apples to oranges, essentially, that they were doing different things. Yeah, and then also, it was a bank robbery case. It was a criminal case, and so the defendant in the case was accused of robbing bank tellers. Here, the jurors were going to be in the shoes of that victim. In this case, I would accept the plaintiff's argument, maybe, if this was an inmate-on-officer put himself in the shoes of the victim in that scenario. Here, though, it's kind of flipped. The allegation is that the corrections officer has failed to protect the plaintiff, so it's not putting yourselves in the shoes of the alleged victim there. But the argument would be that, you know, you failed to protect the inmates that you protect at, or you're Yeah, and he said, I mean, all we can go on is what this juror said, and there's no evidence that he was not credible. He said, sometimes, and I think working, he had risen to the level of sergeant, rising to that level, you do kind of deal with administrative responsibilities. You deal with complaints against officers. You investigate your officers. So you're seeing both sides, and he said, sometimes, the officers are right. Sometimes, the inmates are right. I can't say one way or the other. He didn't have a feeling one way or the other. He would listen to the evidence. I just wanted to address our waiver argument, as well, really quickly, because the plaintiff has indicated that, because in Dyer, in a footnote, this was deemed, implicit bias was a structural error, that it can't be waived. And I don't think that that's entirely correct. In Caterpillar, the Federal Circuit addressed waiver before going into its implicit bias analysis. Similarly, in Rodriguez, probably the Ninth Circuit case, dealing in the civil in terms of the application of the employment plus one factor, Rodriguez had moved to excuse the juror on the basis of implied bias. That did not happen here. Plaintiff did object to the juror on the basis of being an unsworn expert in the jury room, but did not ever say, you know, we fear that he has a fear of, might have a fear of being in a civil lawsuit and, therefore, is implicitly biased. This is not in the record, in the appellate record. But Plaintiff's counsel did address implicit bias in the context of ethnicity and race early on, and was allowed to ask questions about that. Having failed to do so here to further develop the record, I think, is waiver or forfeiture of the argument. This is just a question of law on a settled record where the facts are basically not disputed, so we can easily reach the question. It's not like it needed further development where waiver really makes a difference then. Well, I guess if the court was going to find that. In your favor. I mean, the whole point in the distinction I drew with the opposing counsel is we normally look at this as a fact question where you do the voir dire and you get all, you make your inquiries, trial judge makes a judgment, we would review that for clear error. But then there's a category of cases where, given the facts and the record, as a matter of law, it's imputed. And he's stuck with the record he has. These are the facts, and the only question is do they legally add up to imputed bias as a matter of law under ALSEP and its progeny. So I understand your technical waiver argument, but it's not a situation where normally we care about waiver because the record wouldn't be developed. Here it's just is the record amount to this as a matter of law. And our position is that no, it does not. There was no personal connection to the parties or the circumstances. The juror was not a victim of a crime or experienced a similar situation as the defendant or the plaintiff in this case. And this court has been hesitant to find bias based on a juror's relative's experiences and never when the juror has been honest on voir dire. And again, this juror, there's no indication this juror was not honest. This juror was not apprised of prejudicial information about the defendant that makes it highly unlikely he could exercise independent judgment. And he's not an employee of the prosecuting agency. The Department of Corrections was not the party in this case. It was two officers. So on that basis, unless anybody has any further questions, we ask you to affirm the verdict. All right. Thank you, Counsel. So we'll hear rebuttal now. Thank you, Your Honor. Just a few points. The first is Counsel referred to what she described as a manufactured fear of liability on behalf of this juror in his role as a corrections officer and a detention officer. But in fact, there is nothing manufactured about that. We cite this at 20 in our brief. Richardson v. McKnight, the Supreme Court recognized that fear of litigation is a distraction for corrections officers. We cite a law review article that surveys law enforcement and corrections officers who said that fear of litigation, of being sued in their professional conduct, is a distraction on the job. That, I think, makes this a unique job, much like a bank teller, where fear of being robbed is inherent to being a bank teller. Fear of being sued is inherent to this specific job, detention-slash-corrections officer, the way that similar fears of litigation are not inherent to most other jobs. Counsel tried to distinguish this case from all sip-on-its-facts in a couple different ways. I was by pointing out that the juror here did not work at the facility where Mr. Richter was assaulted. He worked at two other ADCR prisons, which is correct. But nothing immunizes the staff working at those facilities from protecting their charges there from being assaulted. The same duty applies to the staff there. And just on all sip-on-its-facts, the Court of your opposing counsels, you know, and this is, I mean, you're both presenting stuff to us I don't think is even a record, that they worked at different places, right? That fact is in the record, I believe. Okay. And so, in some sense, if it had been pressed more in the Court, we would have more details about similarities or differences between the job of the person who was being sued and the job of this juror. And so, how come waivers shouldn't kind of apply to that? Because it's not having put that in, not having made the implicit bias argument directly and then putting the stuff in, it sort of hobbles us a little bit from being able to make that judgment at the level, you know, at the granular level. Well, just one quick thought also. I would just like to point out that although this, you know, juror worked at a different facility, the jurors in all sip did not work at the bank that was robbed. They worked at a different bank under the same employer, different branch on the same employer. In terms of the waiver argument, I disagree with counsel that Mr. Richter did not make the waiver argument to the district, excuse me, the implied bias argument to the district court. You can see that in our reply brief, I believe at 23. The factors Mr. Richter identified as the grounds for dismissing the juror were core implied presumed bias arguments. He noted that this juror stated he could be fair and impartial, but then noted that human nature, his background, his closeness to the profession, employment background, all of those things would naturally tend to produce bias, notwithstanding the juror's representations that he could be fair, right? That is the core of implied bias, that even when a juror represents that they can be fair, you have to look beyond that to the overall circumstances of the case, and that is what is the issue here. Mr. Further questions? All right. Thank you, counsel. The case just argued will be submitted and we are recessed for today.
judges: COLLINS, VANDYKE, MENDOZA